# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                No. CR 09-1035 JB

FLOYD YUSELEW,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Motion for Departure, Objections to Presentence Report and Sentencing Memorandum, filed April 22, 2010 (Doc. 46) ("Motion").  The Court held a sentencing hearing on May 7, 2010.  The primary issues are: (i) whether the United States Probation Office ("USPO") erred in assessing Defendant Floyd Yuselew a 2-point enhancement for obstructing the administration of justice; (ii) whether the USPO erred when it assessed 1 criminal history point for Yuselew's conviction of patronizing a prostitute, for which he received a forty-four day time-served sentence; (iii) whether Yuselew's criminal history category of II overrepresents the seriousness of his criminal conduct; and (iv) whether a sentence at the bottom end of the guideline range is reasonable.  The Court believes that the USPO properly applied the 2-point enhancement for obstruction and will thus overrule the objection to the enhancement to Yuselew's offense level.  The Court will sustain the objection to the criminal history point for Yuselew's prior conviction for patronizing a prostitute.  The Court will deny the motion for downward departure.  The Court will, however, sentence Yuselew to the bottom of the applicable advisory guideline range -- 210 months.

## FACTUAL BACKGROUND

On January 25, 2009, Yuselew killed Tyler Quam by hitting him in the head with an ax.  See Presentence Investigation Report ¶ 8-11, at 4 (disclosed Mar. 16, 2010)("PSR").  The night before the murder, Yuselew and his girlfriend, Carlotta Calavaza, were in bed together in a house at Lot 15, Lesarlley Road, in the Pueblo of Zuni, New Mexico.  See PSR ¶ 17, at 5.  Quam entered the house and walked into the bedroom.  See id.  Because Quam somehow entered through a door that was supposedly locked, Yuselew got angry with Quam and called him a witch.  See id.  Notwithstanding the anger, Yuselew apparently let Quam spend the night at the house, in the bedroom.  See id.

The next morning, on January 25, the three woke up at about 9:30 a.m.  See PSR ¶ 18, at 6.  The three ran some errands together and eventually returned to the house with a thirty-pack of beer and a fifth of vodka.  See PSR ¶¶ 19-20, at 6.[1]  All three began drinking heavily, and Calavaza began to prepare food.  See PSR ¶¶ 20-21, at 6.  During this time, she was talking with Quam, and Yuselew was apparently becoming both drunk and jealous.  See id. ¶ 20, at 6.  Although there had apparently been no physical contact between Calavaza and Quam, Yuselew said to Quam: "If you touch my wife again I'll kill you."  Id.  He then left the room, returned with an ax, and said: "I told you if you touch her again I would kill you."  Id.  In spite of Calavaza's protestations that Quam had not touched her, Yuselew struck Quam in the head and neck area with the ax, killing him.  See id.  Yuselew then attacked Calavaza, hitting her in the face with his fists.  See id. ¶ 21, at 6.

Once Yuselew stopped hitting Calavaza, they left the room and went to the kitchen.  See PSR ¶ 22, at 6.  He helped her clean up some of the blood and change her bloodied clothes.  See id.

---

[1] Two other persons -- Ronnie Tsosoeeh and an unidentified person -- accompanied Yuselew, Calavaza, and Quam on their errands, but did not return with them to the house.

Yuselew told Calavaza that, if she told anyone what happened, he would kill her.  See id.  Some time later, Yuselew told Calavaza that he was digging a hole behind the house to bury the body, but complained that the ground was too hard.  See id. ¶ 25, at 7.

On March 24, 2009, a woman identified as Jeanette Tsadaisi contacted the Zuni Tribal Police Department and advised them that she had received a telephone call from Yuselew, who told Tsadaisi that her daughter, Calavaza, had killed an unidentified male at the house on Lesarlley Road.  See id. ¶ 9, at 4.  The police interviewed Calavaza the same day, and Calavaza stated she was Yuselew's girlfriend.  She then told police that Yuselew killed Quam and threatened to harm her if she told anyone of the incident.  See id. ¶ 10, at 4.  She said Yuselew had confessed the killing to a cousin, Edison Walela, and had tried to borrow a truck to dump the victim's body.  See id.

When officers investigated the house on Lesarlley Road, they noticed it was dark and vacant, with a pad lock on the front door.  See id. ¶ 11, at 4.  Officers forced entry and located the dead body.  See id.  The house appeared to be abandoned.  See id.  The officers found evidence inside the house, including the victim's body, what appeared to be a grave dug in a chicken coop in the back yard, and an ax buried in the soil near the makeshift grave.  See id. ¶ 12, at 4.

## PROCEDURAL BACKGROUND

Yuselew was arrested on March 25, 2009, near the residence and without incident.  See id. ¶ 13, at 5.  On April 22, 2009, a federal Grand Jury indicted Yuselew for committing a premeditated murder in Indian Country, in violation of 18 U.S.C. §§ 1153 and 1111.  See Indictment at 1, filed April 22, 2009 (Doc. 14).  He pled guilty to one count of second-degree murder on January 12, 2010.  See Plea Agreement ¶ 3, at 2, filed January 12, 2010 (Doc. 40)("The Defendant agrees to waive these rights and to plead guilty to the information, charging a violation of 18 U.S.C. § 1111(a), that being Second Degree Murder.").

    **1.**      **The USPO's Calculation of Yuselew's Offense Level and Criminal History Category.**

On March 16, 2010, the USPO disclosed a PSR that calculates Yuselew's total offense level to be 37 and his criminal history category to be II. See id. ¶¶ 40, 47, at 9, 11. The PSR assesses Yuselew 2 criminal history points. See PSR ¶¶ 42, 43, at 9-10. One point is for a domestic battery in 2004, for which Yuselew received a probated sentence that he completed in 2006. The second criminal history point, and the subject of Yuselew's first objection and his departure request, is a 2007 conviction for patronizing a prostitute. The PSR indicates that Yuselew received a "forty-four (44) day credit for time served jail sentence," PSR ¶ 43, at 10, and he was thus assessed 1 criminal history point. The combination of an offense level of 37 and a criminal history category of II yields a guideline imprisonment range of 235 to 293 months.

    **2.**      **Yuselew's Objections, Motion, and Request, and the United States' Response.**

Yuselew, in his sentencing memorandum, makes two objections, a motion for a downward departure, and a request for a sentence at the low end of the advisory guideline range. The first objection relates to paragraph 43 of the PSR, which describes Yuselew's prior conviction for patronizing a prostitute as follows: "The defendant was represented by counsel. Offense reports indicate the defendant approached an undercover police officer and offered her money in return for a sexual encounter. After agreeing to the encounter, the defendant was placed under arrest without incident." PSR ¶ 43, at 10. Yuselew pled guilty to the crime. The description of his sentence states: "Sentenced to 44 days jail time (time served) and court costs." Id. The court file, however, has been destroyed, see Motion Exhibit A, at 1 ("ARCH. Loc.: DESTROY"), making the details of the crime difficult to reconstruct. All that is now available to document the conviction is the entry from the "Web-Based Case Management System." Motion Exhibit A, at 1. This document appears to be a

-4-

computer-entry trace system which summarizes a case history.

According to Yuselew, on September 16, 2007, he appeared before a judge, and the judge set a $100.00 cash surety bond.  The bond was never posted, and Yuselew remained in prison.  On October 24, 2007, Yuselew pled guilty and was sentenced.  The record indicates that he pled guilty and received a "deferred" judgment.  The record also indicates that he received a sentence of forty-four days against which he received forty-four days of credit for time served and that seventy-one dollars of court costs were converted to the jail sentence.  See Motion Exhibit A.

Yuselew argues that his conviction for patronizing a prostitute should be excluded from his criminal history calculation pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 4A1.2(c)(1).  See Motion at 1-2.  He asserts that § 4A1.2(c)(1) excludes from a defendant's criminal history calculation certain misdemeanor offenses, and other offenses "similar to them," if the sentence for the prior offense was probation for one year or less, or imprisonment for less than thirty days.  See id. Yuselew thus argues that, because patronizing a prostitute is "similar to" the offense of prostitution, which § 4A1.2(c)(1) specifically lists, and his sentence was "time served," the Court should not consider that conviction in calculating his criminal history category.  Motion at 2-3.   In other words, Yuselew argues, a sentence of time served is not a term of imprisonment of at least thirty days.  See Motion at 3.

The United States, in its response, agrees that the crime of patronizing a prostitute is similar to the crime of prostitution, but disagrees that Yuselew's forty-four-day time-served sentence is a sentence of less than thirty days imprisonment.  See The United States' Response to the Defendant's Motion for Departure, Objections to Presentence Report, and Sentencing Memorandum at 4-5, filed May 5, 2010 (Doc. 46)("Response").  The United States thus argues that the § 4A1.2(c)(1) dictates that the Court assess a criminal history point against Yuselew for his patronizing-a-prostitute

conviction.  See Response at 5.

Yuselew next requests a downward departure to his criminal history category pursuant to U.S.S.G. § 4A1.3(b)(1), because that criminal history category substantially overrepresents the seriousness of his past criminal conduct.  See Motion at 5-9.  He bases this argument largely on the same patronizing-a-prostitute conviction that is the subject of his first objection, arguing that, absent the forty-four-day time-served sentence, the crime would not impact his criminal history category. The thrust of this argument is that the state judge in the patronizing-a-prostitute conviction was not considering the impact his sentence would have on the guideline calculation when he sentenced Yuselew to a forty-four-day time-served sentence.  The state judge was, Yuselew asserts, merely making the sentence time-served, and if the amount of time served had been less than thirty days, the state judge would have assessed a time-served sentence of less than thirty days.  Yuselew argues that the mere happenstance that it took more than thirty days for the state judge to sentence Yuselew should not have the effect of hiking up his criminal history by one full category.  See Motion at 7 ("The sentence does not reflect the severity of the offense or particular characteristics of the defendant, other than his inability to post bond and the length of his pretrial detention.").  The United States disagrees and argues that a downward departure under § 4A1.3(b)(1) is not warranted. See Response at 6-7.

Yuselew's second objection is to the 2-level enhancement to his offense level for obstruction or impeding the administration of justice.  See Motion at 9-14.  Paragraph 37 of the PSR applies the enhancement of U.S.S.G. § 3C1.1 and states:

> In this case, the defendant threatened to kill Carlotta Calavaza after committing the murder, if she disclosed to anyone what the defendant did. . . . Additionally, the defendant buried the murder weapon, and padlocked the front door to the residence after committing the murder. . . . Based on this information, a two-level increase is warranted.

PSR ¶ 37, at 9.  Yuselew objects to the application of the § 3C1.1 enhancement, because the obstructing conduct must be "purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction," and Yuselew's actions were not likely to thwart the investigation or prosecution.  Motion at 12-13.  He argues that threatening Calavaza was done in the heat of the moment, and was therefore not purposefully calculated to thwart the investigation or prosecution.  See id. at 13.  He also argues that, because the ax was discovered immediately upon the police officers' investigation of his house, burying it was not likely to thwart the investigation or prosecution.  See id. at 13-14.  Finally, he contends that, because he confessed his crime to Walela and confessed the crime to his daughter, "it is clear that his conduct was not 'likely to thwart' the investigation or prosecution of the offense."  Id.  The United States responds that the § 3C1.1 enhancement is warranted under the facts of this case, pointing specifically to Yuselew's threatening Calavaza and his attempts to dispose of the body.  See Response at 7-10 (citing United States v. Rising Sun, 522 F.3d 989 (9th Cir. 2008)).

Yuselew's final request is for a sentence at the bottom of the applicable guideline range.  See Motion at 14-16.  He asserts that this case warrants a low-end guideline sentence because his actions were in a drunken stupor and in the heat of the moment, and because Quam was killed instantly and did not suffer substantial pain or have an opportunity to fear his impending death.  See id. at 15.  The United States opposes this request as well, asserting that the heinous nature of the crime warrants imposition of a sentence at the high end of the advisory guideline range.  See Response at 10-11.

3.      **The Hearing.**

At the hearing, Richard Winterbottom, Yuselew's attorney, changed slightly his argument regarding paragraph 43.  Rather than asserting that a time-served sentence should not constitute a term of imprisonment, Mr. Winterbottom made a factual argument, noting that it was ambiguous

whether Yuselew was sentenced to a time-served sentence or a deferred sentence when he pled guilty to the offense of patronizing a prostitute.  See Transcript of Hearing at 6:16-7:3 (taken May 7, 2010)("Tr.") (Winterbottom).[2]  He argued that, if the sentence was deferred, no portion of the sentence could have been served, and so there was no basis to find that the term of imprisonment was at least thirty days.[3]  Assistant United States Attorney Jack Burkhead acknowledged some lack of clarity in the documents, at which point he agreed that the United States would withdraw its opposition to that objection.  See Tr. at 12:24-14:7 (Court, Burkhead).  The Court thus sustained Yuselew's first objection, striking the criminal history point based on Yuselew's prior conviction for patronizing a prostitute.  See id. at 14:1 (Court).  Mr. Winterbottom conceded that the Court's sustaining of the first objection rendered moot his request for a downward departure.  See Tr. at 14:9-14 (Court, Winterbottom).

Mr. Winterbottom then argued that the 2-point enhancement for obstruction should be struck from Yuselew's offense level, because none of the acts he committed were purposeful or likely to thwart the investigation or Yuselew's eventual prosecution.  See Tr. at 14:25-20:20 (Winterbottom).  Assistant United States Attorney Jennifer Rozzoni began by pointing out that premeditation can occur in a very short period of time, and that it could have happened while Yuselew and Calavaza were leaving their house on the morning of the murder.  See Tr. at 24:3-9 (Rozzoni).  She also underscored for the Court that a § 3C1.1 enhancement is warranted when one obstructs or impedes, or attempts to obstruct or impede, the administration of justice.  See Tr. at 24:20-25:9 (Rozzoni)

---

[2] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[3] Mr. Winterbottom did not deny that Yuselew spent forty-four days in jail; rather, he argued that a deferred sentence would not constitute a term of imprisonment under § 4A1.2(c)(1).

(emphasis added).  In reply, Mr. Winterbottom re-emphasized his argument that the "purposefully calculated" standard in § 3C1.1 should be interpreted as a specific-intent standard, involving some level of premeditation.  See Tr. at 31:10-34:13 (Court, Winterbottom).

## U.S.S.G. § 4A1.2(c)(1)

U.S.S.G. § 4A1.2(c)(1) excludes from criminal history a list of "prior offenses and offenses similar to them, by whatever name they were known," unless "the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days."[4]  Included in the list of excluded offenses are prostitution and trespassing.  See United States v. Perez de Dios, 237 F.3d 1192, 1198-99 (10th Cir. 2001)("We note with approval that the Eighth Circuit has held that 'similar' is to be given its 'normal' dictionary meaning 'nearly corresponding; resembling in many respects; somewhat alike; having a general likeness.").  The provision raises two issues in the context of this case: (i) how a court determines whether a crime is "similar to" one of the crimes listed in U.S.S.G. § 4A1.2(c)(1); and (ii) whether a time-served sentence after thirty days of pretrial confinement constitutes a "term of imprisonment of at least thirty days."

### 1.    Similarity.

The Tenth Circuit has stated that, "[i]n assessing similarity, we 'examine whether the underlying behavior necessary to commit the prior misdemeanor shares the same general characteristics as the behavior required to commit an offense expressly listed under [U.S.S.G. § 4A1.2](c)(1) or (c)(2).'"  United States v. Overholt, 307 F.3d 1231, 1252 (10th Cir. 2002)(quoting

---

[4] A prior listed offense, or one similar to the listed offense, is also counted in the criminal history calculation if "the prior offense was similar to an instant offense."  U.S.S.G. § 4A1.2(c)(1). Because the prior offense was patronizing a prostitute and the instant offense is second-degree murder, the Court believes it is safe in concluding that the prior offense is not similar to the instant offense.  The Court therefore does not traverse this line of analysis.

United States v. Perez de Dios, 237 F.3d 1192, 1197 (10th Cir. 2001)).  That the prior crime is only similarly insignificant is not a sufficient similarity to warrant application of § 4A1.2(c)(1).  See United States v. Overholt, 307 F.3d at 1252 (holding that none of the listed offenses is "similar to" providing alcohol to minors); United States v. McDonald, 106 F.3d 1218, 1221 (5th Cir. 1997) (finding prior offense of failing to identify himself to a police officer was similar to charged offense of using false identification documents); United States v. Norman, 129 F.3d 1393, 1400-01 (10th Cir. 1997)(finding prior conviction for harassment was not similar to the charged offenses of disorderly conduct or disturbing the peace); United States v. Hooks, 65 F.3d 850, 854-56 (10th Cir. 1995)(finding prior conviction of "larceny of merchandise" was not similar to the charged offense of possession with intent to distribute cocaine); United States v. Mitchell, 941 F.2d 690, 691-92 (8th Cir. 1991)(finding prior offense of operating a motor vehicle with fictitious license places was not similar to charged offense of possession with intent to distribute cocaine base); United States v. Cox, 934 F.2d 1114, 1124 (10th Cir. 1991)(finding that a prior conviction of menacing was not similar to a charged traffic infraction or disorderly conduct).  The Tenth Circuit in United States v. Perez de Dios "note[d] with approval that the [United States Court of Appeals for the] Eighth Circuit has held that 'similar' is to be given its 'normal' or dictionary meaning -- '[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.'" 237 F.3d at 1198 (quoting United States v. Mitchell, 941 F.2d at 691).

On the other hand, in 2007, the United States Sentencing Commission amended the application notes regarding the "similar to" aspect of § 4A1.2.  Application Note 12 now states:

> In determining whether an unlisted offense is similar to an offense listed in subdivision (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense;

> (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G. § 4A1.2 cmt. 12 ("Application of Subsection (c)."). The notes explaining why the guidelines were amended state that one reason is to "resolve[] a circuit conflict over the manner in which a non-listed offense is determined to be 'similar to' an offense listed at § 4A1.2(c)(1) and (2)." U.S.S.G. § 4A1.2 (notes on the 2007 amendment). It is possible that patronizing a prostitute and prostitution are not similar to one another under the new analysis in the application notes.

> The amendment resolves a circuit conflict over the manner in which a court should determine whether a non-listed offense is "similar to" an offense listed at § 4A1.2(c)(1) or (2). Some courts have adopted a "common sense approach," first articulated by the Fifth Circuit in United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991). This common sense approach includes consideration of all relevant factors of similarity such as "punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." Id. Other courts have adopted a strict "elements" test, which involves solely a comparison between the elements of the two offenses to determine whether or not the offenses are similar. This amendment, at Application Note 12(A), adopts the Hardeman "common sense approach" as a means of ensuring that courts are guided by a number of relevant factors that may help them determine whether a non-listed offense is similar to a listed one.

U.S.S.G. § 4A1.2 (notes on the 2007 amendment)(citations omitted). The Tenth Circuit has yet to address this amendment, and the amendment indicates that the Sentencing Commission disagreed with the Tenth Circuit's similarity analysis. See United States v. Sullivan, 313 Fed. Appx. 147, 150-51 (10th Cir. 2009)("As we stated in United States v. Perez de Dios, to be 'similar' is to be 'nearly corresponding; resembling in many respects; somewhat alike; having a general likeness.'").[5] The

---

[5] The Tenth Circuit in United States v. Sullivan had no reason to address the amended Application Note because the sentencing occurred before the November 1, 2007 effective date of the amendments. See United States v. Sullivan, No. CR 06-0402 JEC-1, Clerk's Minutes, filed October 18, 2007 (Doc. 63)(recounting that the sentencing occurred on October 18, 2007). The Tenth Circuit thus has not had a clear opportunity to address the 2007 amendment.

Court need not resolve the effect of the 2007 amendment on current Tenth Circuit jurisprudence, however, because the parties in this case agree that the crimes of patronizing a prostitute and prostitution are similar for the purposes of U.S.S.G. § 4A1.2(c)(1).

### 2.     <u>Whether a Time-Served Sentence is a Term of Imprisonment</u>.

For a normally excludable offense to be included in the criminal history, § 4A1.2(c)(1) requires that the "sentence was . . . a term of imprisonment of at least thirty days." U.S.S.G. § 4A1.2(c)(1). The text of section § 4A1.2(c)(1) does not clearly specify what constitutes a term of imprisonment under the rule. The application notes and other rules, however, are informative.

The language of U.S.S.G. § 4A1.2(c)(1), concerning whether the "sentence was a term of imprisonment," is similar to that concerning the general criminal history determination guidelines of § 4A1.1(a) and (b), which employs the term "prior sentence of imprisonment." The Application Note 2 to § 4A1.2 notes: "[T]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence . . . ." U.S.S.G. § 4A1.2 cmt. 2.

The Tenth Circuit takes a relatively strict approach to the determination of a term of imprisonment. In <u>United States v. Cruz-Alcala</u>, 338 F.3d 1194 (10th Cir. 2003), the Tenth Circuit appeared to take the view that, regardless how or when a term of imprisonment is served, the length of sentence imposed by the judge is the "term of imprisonment" under the guidelines:

> Section 4A1.2(b)(1) defines "sentence of imprisonment" to mean "the maximum sentence imposed." "Criminal history points given under § 4A1.2(b) are based on the sentence pronounced, not the length of time actually served." <u>United States v. Holbert</u>, 285 F.3d 1257, 1263 (10th Cir. 2002)(citing USSG § 4A1.2, comment. (n.2)). The Guidelines make no "distinction as to how or when the defendant must serve the sentence, such as receiving time off for good behavior, surrendering voluntarily at some future date or getting credit for time spent awaiting trial." <u>United States v. Staples</u>, 202 F.3d 992, 997 (7th Cir. 2000). The "sentence pronounced" here was 320 days; that is what matters under the Guidelines. <u>See</u> <u>Holbert</u>, 285 F.3d at 1263 (sentence of 90 days in jail, with possibility of two days' credit for each day served, treated as 90-day sentence); <u>United States v. Rodriguez-Lopez</u>, 170 F.3d

1244, 1246 (9th Cir. 1999)(sentence of "time served" (62 days was served between defendant's arrest and sentence) treated as 62-day sentence); United States v. Garin, 103 F.3d 687, 690 (8th Cir. 1996)(sentence of 60 days with credit for 2 days "time served" treated as 60-day sentence); Staples, 202 F.3d at 997-98 (sentence of 250 days with credit for 250 days served on an unrelated offense treated as 250-day sentence); United States v. Atkinson, 15 F.3d 715, 721 (7th Cir. 1994)(sentence of 77 days "time served" treated as 77-day sentence).

United States v. Cruz-Alcala, 338 F.3d at 1199-1200. See United States v. Soto-Melchor, 273 Fed. Appx. 754, 757 (10th Cir. 2008)(applying points for a prior misdemeanor under U.S.S.G. § 4A1.2(c)(1) where the trial court imposed a 30-day sentence, of which the defendant served only 10 days). On the other hand, "[t]o constitute a 'term of imprisonment of at least thirty days,' the defendant must actually serve some portion of that sentence." United States v. Caldwell, 585 F.3d 1347, 1354 (10th Cir. 2009)(quoting U.S.S.G. § 4A1.2, cmt 2). It thus appears that, at least in the Tenth Circuit, a defendant's "term of imprisonment" is based on the sentence of imprisonment that the trial judge imposes, regardless of how or when the defendant serves the sentence, so long as the defendant serves at least some part of that sentence in prison.

## U.S.S.G. § 3C1.1

U.S.S.G. § 3C1.1 states:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

The application notes state: "Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." U.S.S.G. § 3C1.1 cmt. 1.

The application notes to U.S.S.G. § 3C1.1 further state that the types of conduct that the

Sentencing Committee believes warrant the upward adjustment include the following:

> (a) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so . . . (d) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (*e.g.*, shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so.

U.S.S.G. § 3C1.1, cmt. 4(a) & (c).  In United States v. Rising Sun, 522 F.3d 989 (9th Cir. 2008), the United States Court of Appeals for the Ninth Circuit applied this provision, and the case is similar to this case.  In United States v. Rising Sun, Rising Sun had killed two people in the presence of his brother, Moses.  See 522 F.3d at 992.  After the murder, Rising Sun was preparing to destroy the clothing he had worn during the murder and threatened Moses with a knife when Moses suggested that he was going to tell someone about the murder.  See id.  Rising Sun was eventually arrested and indicted, then pled guilty to two counts of second-degree murder.  See id.  The sentencing judge imposed the 2-point obstruction enhancement pursuant to § 3C1.1, because Rising Sun had threatened Moses to keep him quiet about the murders and had attempted to destroy the blood-stained clothing he was wearing when he committed them.  See United States v. Rising Sun, 522 F.3d at 995.  The Ninth Circuit reversed, after determining that affirmance would be appropriate if the trial court were applying the 2006 version of the Guidelines.  See id. at 996-97.[6]  The Ninth Circuit stated:

---

[6] In the Ninth Circuit, before the 2006 amendment, actions taken before the police initiated an investigation into the defendant's crime could not be considered as the basis for a § 3C1.1 enhancement.  Thus, notwithstanding the near-perfect fit between Rising Sun's conduct and the examples listed in the application notes to § 3C1.1, the Ninth Circuit reversed because the conduct in which Rising Sun engaged occurred before the police had begun investigating the murders he committed.  Because the trial court was constrained to apply the 2003 version of the Guidelines, it was error to apply the enhancement based on pre-investigation conduct.  The Court is not so constrained in this case.

-14-

> [T]he new application note 1 in the commentary to § 3C1.1 states that "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." This application note would appear to be an almost letter-perfect description of the conduct that Rising Sun engaged in after committing the murders; nonetheless, it cannot be applied to his case.

Id. The Ninth Circuit would apply the enhancement to Rising Sun's conduct, notwithstanding that the obstruction did not actually impede the investigation or prosecution of Rising Sun, and there is nothing to indicate that the Tenth Circuit would hold otherwise.

## ANALYSIS

Yuselew's offense level is 37 and his criminal history category is II, resulting in a guideline imprisonment range of 235 to 293 months.  Yuselew raises two objections, requests a downward departure, and seeks a sentence at the bottom of the advisory guideline range.  The United States initially opposed all of Yuselew's requests, but withdrew its challenge to Yuselew's objection to paragraph 43 at the hearing.  The Court must thus resolve Yuselew's second objection, his request for a downward departure, and his request for a sentence at the bottom of the advisory guideline range.  While the Court overrules his contested objection and denies his request for a downward departure, the Court grants Yuselew's final requests and sentences Yuselew to a term of 210 months -- a sentence at the bottom of the guideline range.

## I.   YUSELEW IS PROPERLY ASSESSED A TWO-OFFENSE-LEVEL INCREASE FOR OBSTRUCTION OF JUSTICE UNDER U.S.S.G. § 3C1.1.

Yuselew objects to the PSR's imposition of a 2-level enhancement for obstruction of justice. He asserts that, when actions are taken before the commencement of a police investigation, such points should be imposed only when the actions are purposefully calculated and likely to thwart the investigation and prosecution.  He argues his actions were neither purposefully calculated nor likely

to thwart the investigation and prosecution.  The United States disagrees, arguing imposition of the

enhancement is proper in this case.  The Court agrees with the United States.

Section 3C1.1 of the U.S.S.G. states:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or
impede, the administration of justice with respect to the investigation, prosecution,
or sentencing of the instant offense of conviction, and (B) the obstructive conduct
related to (i) the defendant's offense of conviction and any relevant conduct; or (ii)
a closely related offense, increase the offense level by 2 levels.

The application notes state: "Obstructive conduct that occurred prior to the start of the investigation

of the instant offense of conviction may be covered by this guideline if the conduct was purposefully

calculated, and likely, to thwart the investigation or prosecution of the offense of conviction."  The

application notes to U.S.S.G. § 3C1.1 regarding the types of conduct that the sentencing guideline

committee believe warrant the upward adjustment include the following:

(a) threatening [or] intimidating . . . a . . . witness . . . , or attempting to do so . . . (d)
destroying or concealing . . . evidence that is material to an official investigation or
judicial proceeding (e.g., shredding a document or destroying ledgers upon learning
that an official investigation has commenced or is about to commence), or attempting
to do so.

Yuselew asserts that only two acts might arguably justify application of this section -- that

he threatened to kill his girlfriend if she told anyone about the murder and that he buried the murder

weapon in his back yard shortly after the murder occurred.  He asserts that these actions were not

"purposefully calculated and likely to thwart the investigation or prosecution of the offense in

question."  The Court disagrees.

Imposition of the 2-level enhancement is appropriate in this case.  First, because all of

Yuselew's acts reflected in the PSR occurred before the police investigation was underway, the

conduct is "covered by [§ 3C1.1] if the conduct was purposefully calculated, and likely, to thwart

the investigation or prosecution of the offense of conviction."  U.S.S.G. § 3C1.1 cmt. 1.  Yuselew

argues that this request imposes a high burden, both in terms of the mental state that the United States must show and the degree to which the conduct is likely to impede the investigation.  The Court concludes, however, that the United States has met its burden in this case.

The Court believes the record shows, by a preponderance of the evidence, that several of Yuselew's acts were purposefully calculated and likely to thwart any investigation into the murder of Quam.  Immediately after he killed Quam, Yuselew beat the only witness and threatened to kill her if she told anyone about the murder.  When they left the house, Yuselew put a padlock on the house containing the dead body that was still in place when the police eventually came to investigate.  Yuselew buried the murder weapon in the back yard and took substantial steps toward burying the body there as well.  When he discovered burying the body would be too difficult, Yuselew attempted to obtain a truck for the purpose of getting rid of the body.  He also called Calavaza's mother and tried to redirect the blame for the murder onto Calavaza, the witness whom he beat and whose life he threatened.

Many of Yuselew's acts are specifically listed in the application notes to § 3C1.1 as examples of conduct that would justify application of the § 3C1.1 enhancement.  He threatened with death the only witness to the crime, which is listed in application note 4(a) ("[T]hreatening [or] intimidating . . . a . . . witness . . . directly or indirectly, or attempting to do so[.]").  And he attempted to hide the murder weapon by burying it in his back yard, and took steps toward concealing the victim's body, which is listed in application note 4(d) ("[D]estroying or concealing . . . evidence that is material to an official investigation or judicial proceeding . . . , or attempting to do so[.]").  Either of these acts appears to be sufficient to warrant imposition of the § 3C1.1 enhancement.

The Court finds unpersuasive Yuselew's argument that none of these actions were

purposefully calculated to thwart the investigation.  First of all, the Court does not believe it should equate "purposefully calculated" with premeditation.  Premeditation has a time component. Meditating on an action -- intending to do something -- is not enough; the thinking about the act must precede the act.  The Tenth Circuit's pattern jury instructions describe premeditation as follows:

> A killing is "premeditated" when it is the result of planning or deliberation.  The amount of time needed for premeditation of a killing depends on the person and the circumstances.  It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent.

Tenth Circuit Pattern Jury Instructions (Criminal) § 2.52 (2006)(FIRST DEGREE MURDER). Premeditation and purposeful calculation both require deliberation, see Black's Law Dictionary at 1300 (9th ed. 2009)("**premeditated**, *adj.* . . . Done with willful deliberation and planning; consciously considered beforehand[.]"); id. at 1356 ("**purposeful**, *adj.* Done with a specific purpose in mind; deliberate."), but premeditation requires the planning to come before the act, and the period of time before the act is important.  For example, a killing like the one Yuselew committed in this case was probably not premeditated -- it was an overreaction to a perceived insult and committed in the heat of the moment.  On the other hand, Yuselew's act -- striking Quam in the neck with an axe -- was purposefully calculated to cause Quam's death.[7]  In other words, the word premeditated has a judicial gloss upon it that makes it arguably more exacting than purposeful and calculated. If the Sentencing Committee had wanted the Court to use premeditation as the standard for application of § 3C1.1, with all of its judicial gloss, it could have used that word.  It did not.

---

[7] This purposeful calculation was evidenced by Yuselew's statement to Quam: "I told you if you touch her again I would kill you."  PSR ¶ 20, at 6.  He expressed an intent to kill Quam and then acted upon it.  There was probably insufficient time for premeditation, but there was time for executing the purposefully calculated act of swinging the ax toward Quam.

Because applying the Tenth Circuit's standard for premeditation to § 3C1.1 might raise the United States' burden beyond that which the Sentencing Commission contemplated when drafting the guidelines, the Court will not hold that "purposefully calculated" can be equated to premeditation. The Court will apply the phrase that the Sentencing Commission used -- purposefully calculated.

The Court believes that, to warrant application of the § 3C1.1 enhancement, the defendant must have deliberately -- not accidentally or incidentally or mistakenly -- done some act with the specific purpose of thwarting the investigation and prosecution. Using this test, the Court believes that at least two of Yuselew's acts were purposefully calculated. Each of the acts listed above demonstrate Yuselew's desire not to be caught by the police. He threatened the only witness with death if she told the authorities and attempted to bury the evidence. While these two acts occurred close in time to the murder, the Court does not believe that § 3C1.1 requires a defendant to sit down, cool off after his grizzly deed, think and plan his obstruction for a specific amount of time, and then threaten a witness or attempt to bury the murder weapon before it can be said that his actions were purposefully calculated to thwart an investigation. The Court believes a defendant can rather quickly after completing a crime begin to purposefully calculate to cover up his crime and thwart an investigation. Furthermore, Yuselew, likely when he became nervous that he would soon be caught, attempted to lay blame for the murder at the feet of someone who he knew was present at the time it was committed. While this final act occurred later, and is not direct evidence of Yuselew's intent when he made the threat and attempted to bury the ax, it is some evidence of his underlying intent to obstruct justice by covering up his involvement in the crime. In sum, Yuselew's intent -- his purposeful calculation -- appears to have been present after this murder and contributed to his attempts to avoid being charged with it. The Court finds that Yuselew's actions are sufficient circumstantial evidence of his state of mind to conclude that the actions were purposefully

calculated to thwart any investigation into Quam's murder.

The Court also finds that the acts were of a kind that were likely to thwart the investigation and eventual prosecution.  While the attempts ultimately failed, they appear to have been successful for a time.  See, e.g., United States v. Phillips, 367 F.3d 846 (9th Cir. 2004)(holding application of the enhancement appropriate even though the defendant's efforts to influence a witness failed, because "the Government need only show an *attempt* to influence a witness to trigger U.S.S.G. § 3C1.1's obstruction of justice enhancement.")(emphasis in original).  Calavaza did not initially tell anyone, and the ax was not found until the police were tipped off and investigated Yuselew's house.  In sum, not only were the actions likely to thwart, they probably did thwart the investigation by delaying its commencement.  Yuselew's actions are therefore fairly characterized as attempts to obstruct or impede the administration of justice.

The Court rejects Mr. Winterbottom's argument during the hearing that the language of application note 1 somehow renders attempts insufficient to justify application of § 3C1.1 if the acts are committed before the investigation commences.  See Tr. at 34:14-35:12 (Winterbottom).  Both the text of § 3C1.1, describing the enhancement, and application note 4, which lists examples of covered conduct, include attempts to obstruct as conduct that justifies application of the enhancement.  See U.S.S.G. § 3C1.1 ("If . . . the defendant willfully obstructed or impeded, or attempted to obstruct or impede . . . .") (emphasis added); id. cmt. 4(a) ("threatening, intimidating, . . . or attempting to do so . . . ."); id. cmt. 4(b) ("committing, suborning, or attempting to suborn perjury . . . ."); id. cmt. 4(c) ("producing or attempting to produce a false, altered, or counterfeit document . . . ."); id. cmt. 4(d) ("destroying or concealing . . . evidence . . . or attempting to do so . . . ."); id. cmt. 4(e) ("escaping or attempting to escape from custody . . . .").  That Yuselew's attempts to obstruct justice failed, therefore, does not bar the Court from applying the § 3C1.1

-20-

enhancement.  The Court concludes that a 2-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 is proper under the facts of this case, and thus overrules Yuselew's second objection.  The Court will calculate Yuselew's sentence based upon an offense level of 37.

## II.   THE COURT OVERRULES AS MOOT YUSELEW'S OBJECTION TO PARAGRAPH 43 OF THE PSR.

Yuselew objects to the fact that the PSR assesses 1 criminal history point in paragraph 43. Yuselew does not believe that the entry in paragraph 43 -- that he was "sentenced to forty-four (44) days jail (time served) and court costs" -- is entirely correct, although he concedes that the precise sentence is somewhat difficult to reconstruct.  The question this objection poses is whether a time served sentence, where the defendant was detained more than thirty days before being sentenced, qualifies as a "term of imprisonment" of at least thirty days, thereby justifying an additional criminal history point pursuant to U.S.S.G. § 4A1.2(c)(1).[8]  Based on these arguments, the Court would be inclined to conclude that a time-served sentence is a term of imprisonment under § 4A1.2(c)(1). Because of the ambiguity in the evidence, and because the United States withdrew its opposition to Yuselew's objection, however, the Court will sustain the objection and strike the criminal history point added in paragraph 43.

As the Tenth Circuit has noted, "[t]he Guidelines make no 'distinction as to how or when the defendant must serve the sentence.'"  United States v. Cruz-Alcala, 338 F.3d at 1199-1200.  The

---

[8] This analysis is only applicable to the extent that the crime of patronizing a prostitute is "similar to" the crime of prostitution, as that term is used in the context of U.S.S.G. § 4A1.2(c)(1). Both parties agree that patronizing a prostitute is "similar to" the crime of prostitution, and the Court agrees.  Moreover, as the Court will explain, the Court also need not perform this analysis because the United States has agreed not to pursue the 2-point enhancement, because the record of Yuselew's patronizing-a-prostitute conviction is ambiguous whether the judge gave a deferred sentence -- in which case the term of imprisonment was zero days and § 4A1.2(c)(1) would demand that no criminal history points attach to the conviction -- or a time-served sentence.  See Tr. at 12:24-14:7 (Court, Burkhead).

Tenth Circuit has thus stated in fairly clear terms that the "sentence imposed" for the purposes of § 4A1.2 includes time-served sentences -- sentences in which the sentence is served before it is announced. Id. The key factor in determining a term of imprisonment is how long the sentence is that the sentencing judge pronounces. See United States v. Soto-Melchor, 273 Fed. Appx. at 757 (holding, in the context of U.S.S.G. § 4A1.2(c)(1), that the term of imprisonment is the period of time that the judge pronounces, not the time actually spent in jail serving the sentence). As long as the judge states a sentence of at least thirty days, and the defendant serves some portion of the term -- even if the time actually served is less than thirty days -- the "term of imprisonment" is at least thirty days. See United States v. Soto-Melchor, 273 Fed. Appx. 754, 757 (10th Cir. 2008). The Court would thus likely hold that Yuselew's time-served sentence of forty-four days was sufficient to trigger § 4A1.2(c)(1) and add 1 point to his criminal history score.

The cases that Yuselew cites in support of his objection are not to the contrary. In United States v. Hall, 531 F.3d 414 (6th Cir. 2008), the United States Court of Appeals for the Sixth Circuit noted:

> Cold reality informs us that a defendant who receives full credit for time served on an entirely separate conviction does not in fact "actually serve" any time for the offense in question. As stated in mathematical terms, plus thirty (days to be served) minus thirty (days credit) equals zero (days actually served).

Id. at 419. This statement might appear to run contrary to the Tenth Circuit's view of the "term of imprisonment" under U.S.S.G. § 4A1.2(c)(1). The Sixth Circuit in United States v. Hall, however, was dealing with a situation in which the sentencing court found that the sentence for the underlying offense was completely satisfied by a term of imprisonment previously imposed, and served, for a separate offense. See 531 F.3d at 416-17 ("For both of the misdemeanor convictions at issue, Hall was given full credit for time already served on a different charge[.]"). In this case, on the other

hand, the state judge sentenced Yuselew to the forty-four days he had already served for the offense of patronizing a prostitute -- the same crime for which he was being sentenced.  In one of its concluding paragraphs, the Sixth Circuit states: "Common sense dictates that time served awaiting trial for the offense in question, and *not* time served for a wholly separate offense, should be considered time 'actually served' under the Guidelines because that time is directly linked to the sentence ultimately imposed." United States v. Hall, 531 F.3d at 419-20 (emphasis in original).  The opinion thus supports the United States' position, and not Yuselew's.

Yuselew's reliance on the United States Court of Appeals for the Eleventh Circuit's opinion in United States v. Buter, 229 F.3d 1077 (11th Cir. 2000), is also inappropriate.  The Eleventh Circuit in United States v. Buter stated that "state court sentences of twenty-seven months, imposed to run concurrently with the previously completed federal sentence" was not "imprisonment" under the guidelines.  229 F.3d at 1078.  Those statements were made, however, in the context of two sentences that were to run concurrently with a sentence that the defendant had already completed. Again, unlike this case, the defendant was not given a sentence of time served where the time served was for the offense in question.  Instead, the defendant in United States v. Buter had served time in jail only for the prior offenses, and not for the offense for which the United States sought to impose additional criminal history points.  These cases are thus inapposite, and actually support imposition of the 1-point enhancement.

In this case, however, it is not entirely clear from the state-court record whether the judge who sentenced Yuselew for the crime of patronizing a prostitute sentenced him to a time-served sentence or a deferred sentence.  Mr. Winterbottom tried to draw out and argue this ambiguity in the sentencing hearing.  See Tr. at 6:16-7:3 (Winterbottom).  If the sentence was deferred, the sentence was not of at least thirty days and § 4A1.2(c)(1) would require the Court ignore the conviction in

calculating Yuselew's criminal history score.  Based on this ambiguity, the United States agreed to forgo the 2-point enhancement of § 4A1.2(c)(1).  <u>See</u> Tr. at 12:24-14:7 (Court, Burkhead).  The Court will therefore sustain Yuselew's first objection and strike the criminal history point added in paragraph 43 of the PSR.  Yuselew therefore has only one criminal history point, which places him in criminal history category I.

III.    **THE COURT WILL DENY AS MOOT YUSELEW'S REQUEST FOR A DOWNWARD DEPARTURE UNDER U.S.S.G. § 4A1.3(b)(1).**

Yuselew initially asked the Court to grant him a downward departure to his criminal history category pursuant to U.S.S.G. § 4A1.3(b)(1) because his criminal history category substantially overrepresents his past criminal conduct and the likelihood that he will commit other crimes in the future.  The United States opposed this request, asserting that Yuselew's criminal history category accurately represents his criminal history.  Now that the United States has declined to pursue the additional criminal history point for Yuselew's prior conviction for patronizing a prostitute, Yuselew's criminal history category is I.  Mr. Winterbottom conceded that the Court's sustaining of Yuselew's objection and reducing his criminal history category to I rendered moot his request for a downward departure.   <u>See</u> Tr. at 14:9-14 (Court, Winterbottom).  The Court thus denies as moot Yuselew's request for a downward departure.

IV.    **A SENTENCE AT THE BOTTOM END OF THE GUIDELINE RANGE IS APPROPRIATE.**

Yuselew's final request is that the Court impose a sentence at the bottom of the advisory guideline range.  The United States requests a sentence at the top of the advisory guideline range.  After sustaining Yuselew's objection to paragraph 43 and overruling his objection to the imposition of a 2-level enhancement pursuant to U.S.S.G. § 3C1.1, Yuselew's offense level is 37 and his criminal history category is I.  An offense level of 37 and a criminal history category of I yield a

guideline imprisonment range of 210 to 262 months.

The Court has carefully considered the guidelines in this case, and, in arriving at its sentence, has taken account not only of the guidelines, but of other sentencing goals. Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant, and the Court believes that the punishment set forth in the guidelines is appropriate for this sort of offense. The major issue in this case is the kind of sentence and the range established by the guidelines and where within that range the Court should sentence Yuselew. After carefully considering the record, the arguments of counsel, the briefing of counsel, as well as the presentations at the hearing by the Quam family, the Court has concluded that a sentence at the bottom end of the guideline range is appropriate in this case.

Yuselew's use of an ax was brutal. The Court cannot, however, say that it was worse in terms of pain or mental anguish to the victim than an unanticipated gunshot. Quam was not victimized more severely than if he had been shot without warning; it is only those left behind that appreciate the chilling effect of a murder committed with an ax. Punishment is undoubtedly warranted. The Court does not believe, however, that the circumstances of the offense or Yuselew's characteristics argue for a sentence outside of the guideline range or for a sentence at the high end of the guideline range.

The facts are largely undisputed regarding what happened in the room on the morning of Quam's murder. Yuselew, in his drunken condition, believed Quam insulted him, and he reacted without thought, in a very violent and tragic way. It was a reaction, however, to what he perceived to be an insult. This pattern is one that the Court sees repeatedly: people being drunk with friends and family, someone insults someone else, and there are violent, tragic consequences. This one played out with an ax, but the Court has seen similar scenarios played out with lead pipes, weed-

whackers, sticks, rocks, and other things.  In the end, they are all second-degree murders.  They are all serious.  They are all violent and thus fall within the same pattern.

This crime is not significantly, if at all, more heinous or degrading than other second-degree murders that the Court has had before it for trial or sentencing.  It is a second-degree murder, so it is heinous and degrading, but not exceedingly so.  It appears that Quam, whether he died instantly or very quickly, did not have much forewarning, and did not have time to feel much fear.  He likely felt little or no pain before death.  The ordeal through which the victim was put does not counsel for an excessively high sentence.

A sentence of 210 months reflects the seriousness of this offense.  It is a very serious offense, but 210 months is also a very serious sentence, particularly given Yuselew's age.  He will be a fairly old man by the time he gets out of prison.  The 210-month sentence promotes respect for the law.  This sentence is not, by any means, a slap on the wrist; it is a considerably long sentence.  The Court also thinks that the sentence provides a just punishment.  This crime occurred in the heat of the moment; Yuselew perceived an insult while drinking a substantial amount of alcohol, and quickly retrieved his ax and killed Quam.  This sentence is lengthy for someone who went out of control, although the Court is confident that the incarceration is well-earned.

The Court believes a 210-month sentence will provide adequate deterrence.  Yuselew did not exhibit this character trait earlier in his 49 years of life, and the sentence is likely to provide specific deterrence to him.  When he is released, he will be at an age when recidivism is substantially reduced.  The Court also believes that the sentence provides general deterrence to the community, such that others will be sufficiently deterred from engaging in similar conduct.  The Court believes that a sentence of 210 months will adequately protect the public.  When Yuselew is released, based on the punishment he is receiving and the age he will be, it is unlikely that he will

commit any future serious crimes.

While the Court's task, as a district judge, is not to come up with a reasonable sentence -- rather, it is to come up with a sentence that balances the factors embodied in 18 U.S.C. § 3553(a), see United States v. Martinez-Barragan, 545 F.3d 894, 904-05 (10th Cir. 2008) -- the Court believes this sentence is a reasonable one.  The Court also thinks the sentence properly reflects the factors embodied in 18 U.S.C. § 3553(a).  And, in the end, a 210-month sentence is sufficient without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.  The Court thus sentences Yuselew to a term of 210 months in the custody of the Bureau of Prisons.

**IT IS ORDERED** that Defendant Floyd Yuselew's first objection in the Motion for Departure, Objections to Presentence Report and Sentencing Memorandum is sustained, his second objection is overruled, and his request for downward departure is denied as moot.  Yuselew's request for variance is granted.  The Court sentences Yuselew to a term of 210 months in the custody of the Bureau of Prisons.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Jack Burkhead
Jennifer M. Rozzoni
  Assistant United States Attorney
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Richard A. Winterbottom
  Assistant Federal Public Defender
Albuquerque, New Mexico

   *Attorney for the Defendant*